DANIEL E. SCOTT, J.
We consider whether Hoeber v. State , 488 S.W.3d 648 (Mo. banc 2016), compels postconviction motion courts to categorically deem unreasonable such strategic concerns as trial counsel (Counsel) voiced here. Finding otherwise, we reverse a grant of postconviction relief and remand for further proceedings.
Background[1]
Colby Sanders (Movant) is serving five concurrent prison terms, effectively 40 *382 years, from a jury trial for sex crimes against his child and stepchildren:
• 15 years for molesting stepdaughter B.S. (Count 1).
• 40 years for sodomizing B.S. (Count 3).
• 15 years for molesting second stepdaughter (Count 5).
• 40 years for sodomizing second stepdaughter (Count 6).
• 40 years for forcibly raping biological daughter (Count 7).[2]
Only Count 1 remains at issue: Movant charges IAC in not challenging the Instruction 5 verdict-director on Celis-Garcia grounds.[3] The motion court initially denied this claim for lack of prejudice, citing State v. Rose , 421 S.W.3d 522, 529 (Mo. App. 2013), and Counsel's testimony that her defense theory was unitary (i.e. , all three victims were lying) rather than offense-specific. Movant filed notice of appeal on April 11, 2016.
Three weeks later, our supreme court handed down Hoeber , which stated that Celis-Garcia did not hold that a defendant "could not suffer prejudice from insufficiently specific verdict directors just because he employed a general or unitary defense." 488 S.W.3d at 657. Hoeber also disapproved Rose and similar cases to the extent they suggested otherwise. Id .
Hoeber led us to reverse the no-prejudice finding on prior appeal here, but did not end the case because "[t]he motion court did not address or make any findings whether [Counsel's] decision not to object was reasonable trial strategy per Strickland [ v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986) ]." Sanders , 535 S.W.3d at 408. We considered the PCR record and U.S. Supreme Court precedent suggesting potential affirmance - even if failure to object was "pure oversight" - given Counsel's testimony that:
• Had she requested verdict-director specificity, she believed the prosecutor would have gotten all four incidents into the instruction.
• She "would have not been happy about that at all." To have "multiple incidents listed [in the instruction] and ... the jury then ask[ed] to reach a unanimous verdict," "would have been horrible, [and] would have been as if I was sending back trial testimony with the jury instruction."
Id . at 408-09.
Even so, we could not say from the record "as a matter of law" whether any finding, pro or con, would be clearly erroneous. Id . at 408-09. We needed the motion court to determine whether even a pure-oversight Celis-Garcia waiver could be "objectively reasonable ... in light of the testimony that there would be sound trial strategy reasons not to object." Id . at 409-10.
It must be the motion court that issues findings of fact and conclusions of law on all issues presented. Rule 29.15(k). Our *383 review is limited, by rule, "to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(i). Without findings and conclusions by the motion court, our reviewing court must engage in a de novo review, which we are not permitted to do.
Id . at 410. We remanded for findings of fact and conclusions of law on whether Counsel's choices "were objectively reasonable." Id .[4]
Eighteen days after our mandate, the motion court summarily granted a new judgment based on the existing record. The court recognized that Counsel "was very experienced and skilled ... had practiced criminal law for 23 years ... first served as a federal public defender for thirteen years, and then began her own successful criminal practice in 2006," with an estimated "66 to 88 criminal jury trials" in her career.
Despite "pure oversight" in not objecting, the court also quoted and credited Counsel's testimony as follows (transcript cites omitted):
• "it 'would have been horrible' to have multiple incidents listed in the verdict director because '[i]t would have been as if I was sending back trial testimony with the jury instruction.' "
• "the prosecuting attorney would have requested that 'all alternative ways of committing the crime would have been submitted.' 'I strongly suspect that if I had raised that objection, I would have been stuck with four alternative ways, uh, going back to the jury about how this could have been committed. And I would not have been happy about that at all.' "
• Counsel's defense "was 'that the three girls were lying' " and Counsel believed Instruction 5 as given did not impact that defense.
Yet the motion court read Hoeber to categorically declare such concerns constitutionally insufficient, such that Counsel's testimony "that she did not want to highlight specific acts of molestation for the jury's consideration has been rejected as reasonable trial strategy by the Supreme Court." Feeling "compelled" by that interpretation to find IAC, the court vacated the Count 1 conviction, observing "that Movant is currently serving longer sentences on other counts from the same case, [so] this decision will have little practical effect."
Analysis
We credit the motion court's desire to scrupulously follow our supreme court's dictates, but had Hoeber "compelled" PCR, we need not have remanded for further findings. As to Strickland performance, we do not read Hoeber as seeking to bind all fact-finders in all cases and circumstances:
In the absence of reasonable trial strategy , trial counsel's failure to object to the insufficiently specific verdict directors did not conform to the degree of skill, care, and diligence of a reasonably competent attorney. Mr. Hoeber, therefore, has shown that, under the circumstances *384 of this case , trial counsel's performance fell outside the wide range of professional, competent assistance.
488 S.W.3d at 660 (our emphasis).[5]
This view of Hoeber honors U.S. Supreme Court precedent. Per Strickland , 466 U.S. at 690, 104 S.Ct. 2052, courts must determine IAC case-specifically and fact-specifically. "Beyond the general requirement of reasonableness, 'specific guidelines are not appropriate.' " Cullen v. Pinholster , 563 U.S. 170, 195, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (quoting Strickland , 466 U.S. at 688, 104 S.Ct. 2052 ). " 'No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions....' " Id . (quoting Strickland , 466 U.S. at 688-689, 104 S.Ct. 2052 ). "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Strickland , 466 U.S. at 689, 104 S.Ct. 2052. "Even the best criminal defense attorneys would not defend a particular client in the same way." Id .
Thus Hoeber 's fact-finding controlled that case, on that record, but not necessarily other cases and records that might be distinguished.[6] In those cases, our Supreme Court directs that courts not simply give attorneys the benefit of the doubt, but affirmatively entertain the range of possible reasons counsel might have acted as they did. Cullen , 563 U.S. at 196, 131 S.Ct. 1388. In this case, for example, that may (or may not, in the fact-finder's view) implicate distinctions such as these:
*385 This Case Hoeber Testimony that the state likely would have Apparently no such evidence, modified the instruction to Movant's leading to our supreme court's detriment in response to a Celis-Garcia discounting of that appellate objection. argument. See 488 S.W.3d at 659 n.7. Testimony that such change "would have Again, apparently no such been horrible," and as if Counsel was evidence. sending harmful testimony back with the jury instruction, which Counsel "would not have been happy about [] at all," at least implicating "precisely the sort of calculated risk that lies at the heart of an advocate's discretion." Yarborough v. Gentry, 540 U.S. 1, 9 (2003). The motion court, as fact-finder, presided Facts found from reviewing an over an evidentiary hearing, was "in a appellate record without superior position not only to judge the benefit of motion-court credibility of witnesses, but also their credibility findings. See 488 sincerity, character, and other trial S.W.3d at 659 n.8. intangibles which may not be completely revealed by the record" (Routt v. State, 535 S.W.3d 812, 819 (Mo.App. 2017)), and credited Counsel's credibility and concerns.
We note these not to suggest what the motion court should find or do here, but to further illustrate why fact-finding is a case-by-case proposition. Hoeber was relevant, of course, and "analysis under the proper standard may well have resulted in the same decision. Applying the wrong standard, however, is reversible error." Dunlap v. State , 452 S.W.3d 257, 262 (Mo. App. 2015).
We reverse and remand for the motion court to make findings of fact and conclusions of law on whether Counsel's choices were objectively reasonable and enter judgment accordingly.[7]
WILLIAM W. FRANCIS, JR., P.J. - CONCURS
MARY W. SHEFFIELD, J. - CONCURS

We curate a complicated trial and PCR history given the limited issue before us. More detail can be found in our prior opinions, State v. Sanders , 449 S.W.3d 812 (Mo. App. 2014), and Sanders v. State , 535 S.W.3d 403 (Mo. App. 2017). We use the shorthand terms "PCR" (postconviction relief) and "IAC" (ineffective assistance of counsel) throughout.

Movant was acquitted on Counts 2 and 4, and we vacated a Count 8 conviction on direct appeal. Sanders , 449 S.W.3d at 815, 819.

In State v. Celis-Garcia , 344 S.W.3d 150 (Mo. banc 2011), statutory-sodomy convictions were reversed because testimony described multiple, separate instances of sexual contact, any one of which could have supported the charged offense, but the verdict-directors did not specify that jurors had to agree on single, specific instances of sexual contact to find the defendant guilty. On direct appeal here, we found that Movant waived any such claim by Counsel's statement to the court that Movant had "no objection" to Count 1's verdict-director. Sanders , 449 S.W.3d at 816.

We deferred to the motion court for reasons stated above and in footnote 7 infra , knowing that under similar circumstances in Hoeber (no motion-court findings re Strickland performance), our supreme court elected to find these itself from the appellate record. 488 S.W.3d at 658-60. On that record, the court's majority rejected the state's several appellate arguments, including one of "reasonable trial strategy," and found "under the circumstances of [that] case" that Hoeber's counsel failed Strickland's performance prong. Id . at 659-60.

Even as to Strickland prejudice, Hoeber is hardly dogmatic:
At no point in Celis-Garcia, however, did this Court conclude that a defendant asserting a general defense could never be prejudiced by non-specific verdict directors.... [W]hile the act-specific defense in Celis-Garcia helped this Court find that the insufficiently specific verdict directors were prejudicial to the defendant, the Court was not required to find prejudice based on her defense. This Court's analysis and holding in Celis-Garcia was not that a defendant like Mr. Hoeber could not suffer prejudice from insufficiently specific verdict directors just because he employed a general or unitary defense. To the extent [State v. ]LeSieur , [361 S.W.3d 458 (Mo. App. 2012) ] and its progeny suggest otherwise, they should no longer be followed.
Id . at 657 (our emphasis).

Indeed, Hoeber 's 5-2 split over "reasonable" trial strategy demonstrates that reasonable minds could - and did - differ in evaluating those facts, such that "reasonable" strategy was not a matter-of-law determination even in Hoeber , much less Hoeber being a matter-of-law dictate for all other cases.

We acknowledge the de minimus practical impact of further proceedings given Movant's other, longer concurrent sentences, but we cannot lend our imprimatur to a Hoeber interpretation that erroneously constrains a PCR-motion court's important fact-finding role, responsibility, and authority. Likewise, although generally "we will not reverse when the motion court reached the right result, even if it was for the wrong reason" (Cox v. State , 479 S.W.3d 152, 157 (Mo. App. 2015) ), we declined before and decline again to act as a fact-finder, deferring instead to the able motion court and its "superior position not only to judge the credibility of witnesses, but also their sincerity, character, and other trial intangibles which may not be completely revealed by the record." Routt v. State , 535 S.W.3d 812, 819 (Mo. App. 2017).